UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

_____

LIFE SHARE COLLATERAL HOLDINGS, LLC,

      Plaintiff,

v.                          **MEMORANDUM OF LAW & ORDER**
                               Civil File No. 12-02504 (MJD/JJK)

MARLENE STRAUSS, an Individual,

      Defendant.

_____

Adam M. Simon, The Simon Law Firm PC and Thomas H. Schaefer, Erstad & Riemer PA, Counsel for Plaintiff.

Kelly K. Pierce, Ross & Orenstein LLC and Tab K. Rosenfeld, Rosenfeld & Kaplan LLP, Counsel for Defendant.

_____

**I.    INTRODUCTION**

      This matter is before the Court on Defendant Marlene Strauss's motion to dismiss under Federal Rule of Civil Procedure 12(b)(2).  [Docket No. 7]  The Court heard oral argument on March 22, 2013.  For the reasons articulated below, the Court denies Defendant's motion to dismiss.

1

## II. BACKGROUND

### A. Factual Background

#### 1. Parties

Plaintiff Life Share Collateral Holdings ("LSCH") is a limited liability company organized under the laws of the state of Delaware. (Compl. ¶ 2.) LSCH's principal place of business is Chicago, Illinois. (Id.) David B. Simon is the sole member of LSCH and is domiciled and resides in Chicago, Illinois. (Id. at ¶ 3.) LSCH is the successor-in-interest to the original lender of the finance loans at issue in this case. (Id. at ¶ 4.) The original lender is Life Share Financial, LLC. (Id.)

Defendant Marlene Strauss is domiciled and resides in Palm Beach, Florida. (Id. at ¶ 5.) On November 7, 2008, Strauss formed the Marlene Strauss Irrevocable Trust (the "Strauss Trust"). (Id. at ¶ 8.) The Strauss Trust was formed in the state of Minnesota and is governed by the laws of the state of Minnesota. (Id.) Wells Fargo Bank, N.A. is the Trustee of the Strauss Trust, and the Trustee's principle place of business is in Minneapolis, Minnesota. (Id.)

#### 2. The Loan Documents

On January 8, 2009, the Strauss Trust, as Borrower, entered into a Loan


Agreement with Life Share Financial, LLC, as Lender.  (Id. at ¶ 11.)  Strauss also executed the Loan Agreement.  (Id.)  On the same day, Strauss—in her individual capacity—executed a personal guaranty (the "Guaranty") in favor of Life Share Financial in order to induce Life Share Financial to make the Loan to the Strauss Trust.  (Id. at ¶ 12.)

The Loan Agreement contains a "Consent to Jurisdiction" clause that states:

> All judicial proceedings brought against Borrower arising out of or relating to this Agreement or any other Loan Document, or any of the obligations of Borrower hereunder or thereunder, may be brought in any state or federal court of competent jurisdiction in the State of Minnesota.  By executing and delivering this Agreement, Borrower, for itself and in connections with its properties, irrevocably (a) accepts generally and unconditionally the nonexclusive jurisdiction and venue of such courts; (b) waives any defense of *forum non conveniens*; (c) agrees that service of all process in any such proceeding in any such court may be made by registered or certified mail, return receipt requested, to Borrower at its address provided in accordance with Section 10.1; (d) agrees that service as provided in clause (c) above is sufficient to confer personal jurisdiction over Borrower in any such proceeding in any such court and otherwise constitutes effective and binding service in every respect; and (e) agrees that Lender retains the right to serve process in any other manner permitted by law or to bring proceedings against Borrower in the courts of any other jurisdiction.

(Ex. 1 to Simon Aff., Loan and Security Agreement at § 10.12.)  The Loan Agreement also contains a clause stating that Minnesota laws shall govern the

parties:

> This Agreement and the rights and obligations of the parties hereunder shall be governed by, and shall be construed and enforced in accordance with, the laws of the State of Minnesota.

(Id. at § 10.11.)

The Guaranty signed by Strauss contains no clause consenting to Minnesota jurisdiction. The Guaranty does include a clause stating that the rights and obligations of the parties are governed by the laws of Minnesota:

> This Personal Guaranty shall be interpreted and the rights and liabilities of the parties hereto determined in accordance with the internal laws and decisions of the State of Minnesota.

(Ex. 2 to Simon Aff., Personal Guaranty at 4.)

The Loan was meant to provide financing for the payment of a life insurance policy that the Strauss Trust purchased on the life of Strauss on December 26, 2008. (Compl. at ¶¶ 9, 11.) The insurance policy was issued to the Strauss Trust in Minnesota and is governed by the laws of Minnesota. (Id. at ¶ 10.)

On January 8, 2009, Life Share Financial made the loan to the Strauss Trust. (Id. at ¶ 13.) The life insurance premium was then paid from the loan proceeds, and the life insurance policy was put into force. (Id.) Pursuant to the Loan

4

Agreement, the Strauss Trust assigned the life insurance policy to LSCH as collateral for the loan. (Id. at ¶ 15.) At some later date, the insurance policy was sold by the Strauss Trust. (Id. at ¶ 16.) The proceeds from this sale were given to LSCH in partial satisfaction of the loan. (Id.)

### 3. Alleged Default of Loan Agreement and Personal Guaranty

In its Complaint, Plaintiff alleges that Defendant defaulted under both the Loan Agreement and Guaranty when she and the Strauss Trust failed to pay Plaintiff the full amount due under the Loan Agreement on or before the maturity date. (Id. at ¶ 19.) Further, pursuant to the Guaranty, Strauss promised to pay twenty-five percent of the total amount that the Borrower, the Strauss Trust, owed to the Lender under the Loan Agreement in the event of default. (Id. at ¶ 20.) On August 28, 2012, Plaintiff sent a written demand for the payment of $111,667.77, which is twenty-five percent of the total deficiency pursuant to the Guaranty. (Id. at ¶ 21.)

### B. Procedural Background

On October 1, 2012, Plaintiff filed a lawsuit against Defendant Marlene Strauss. [Docket No. 1] The Complaint alleges that Defendant and the Strauss Trust defaulted under the Loan Agreement and Guaranty. [Doc. 1] The

Complaint bases recovery solely on the Guaranty, demanding twenty-five percent of the total deficiency amount. On November 29, 2012, Defendant submitted the current motion, requesting that the Complaint be dismissed for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. [Doc. No. 7]

### III.   DISCUSSION

**A. Motion to Dismiss for Lack of Personal Jurisdiction**

    **1.   Rule 12(b)(2) Standard**

Under Rule 12(b)(2) of the Federal Rules of Civil Procedure, a defendant may move the court to dismiss a claim if the court lacks personal jurisdiction over that party. While the plaintiff eventually bears the burden to establish personal jurisdiction by a preponderance of the evidence, when personal jurisdiction is decided prior to an evidentiary hearing and based solely on the pleadings and affidavits, the nonmoving party need only establish a prima facie showing of jurisdiction. Dakota Indus., Inc. v. Dakota Sportswear, Inc., 946 F.2d 1384, 1387 (8th Cir. 1991). "[T]he court must look at the facts in the light most favorable to the nonmoving party, and resolve all factual conflicts in favor of that party." Id. (citations omitted).

A federal court must employ a two-step inquiry to determine whether it has jurisdiction over a non-resident party. Soo Line R.R. Co. v. Hawker Siddeley Can., Inc., 950 F.2d 526, 528 (8th Cir. 1991). The court must examine: "(1) whether the facts presented satisfy the forum state's long-arm statute, and (2) whether the nonresident has 'minimum contacts' with the forum state, so that the court's exercise of jurisdiction would be fair and in accordance with due process." Id. (citations omitted). "The Minnesota long-arm statute extends jurisdiction to the fullest extent permitted by the due process clause. Thus, the Court need only determine whether the due process clause allows jurisdiction in this case." Id. (citations omitted).

> The Eighth Circuit has explained:
>
> The due process clause requires there be minimum contacts between the defendant and the forum state before the forum state may exercise jurisdiction over the defendant. Sufficient contacts exist when the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there, and when maintenance of the suit does not offend traditional notions of fair play and substantial justice. In assessing the defendant's reasonable anticipation, there must be some act by which the defendant purposefully avails itself to the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.

Id. at 528–29 (citations omitted). The Eighth Circuit has further held that:

> The purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts or of the unilateral activity of another party or a third person. Jurisdiction is proper, however, where the contacts proximately result from actions by the defendant himself that create a substantial connection with the forum State.

Stanton v. St. Jude. Med., Inc., 340 F.3d 690, 693–94 (8th Cir. 2003) (citations omitted).

The court examines five factors in order to determine whether the exercise of jurisdiction comports with due process:

> (1) the nature and quality of the contacts with the forum state; (2) the quantity of contacts with the forum; (3) the relation of the cause of action to these contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties.

Id. at 694 (citations omitted). The first three considerations are of primary importance, and the last two are secondary factors. Id.

Finally, the Court may exercise either specific or general jurisdiction over a party. "Where a court premises jurisdiction over a defendant upon the relationship between the plaintiff's claims and the defendant's forum state activities, it has been said that the court is exercising specific jurisdiction." Morris v. Barkbuster, Inc., 923 F.2d 1277, 1280 (8th Cir. 1991) (citations omitted). A court can exercise general jurisdiction when the defendant has "continuous

and systematic" contacts with the forum state. Id. at 1280–81. In the present case, neither party argues that the Court has general jurisdiction. Thus, the Court's analysis focuses solely on whether it may exercise specific jurisdiction.

### 2. Merits

Defendant argues that the Complaint must be dismissed for lack of personal jurisdiction based on the five factors laid out in Stanton, 340 F.3d at 693–94. Defendant contends that she has absolutely no contacts with Minnesota. Defendant states that she is a Florida resident who does not own property in Minnesota and—but for a one-day visit in 1979—has never stepped foot in Minnesota. Focusing exclusively on the Guaranty, Defendant argues that the transaction at issue was executed in either New York or Florida. The Guaranty was entered into by Strauss, a Florida resident, and Life Share Financial, a New York company. The Guaranty was then assigned to Plaintiff LSCH, a Delaware corporation based in Illinois. Thus, Defendant concludes that no Minnesota entity had any involvement with respect to the Guaranty and that there is no basis for jurisdiction under the five factors set forth in Stanton.

### a. Primary Factors

Strauss contends that the Court may not exercise personal jurisdiction over

her because she has only visited Minnesota once for a one-day visit. On the issue of physical presence, the United States Supreme Court has held:

> Although territorial presence frequently will enhance a potential defendant's affiliation with a State and reinforce the reasonable foreseeability of suit there, it is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted. So long as a commercial actor's efforts are "purposefully directed" towards residents of another State, we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there.

Burger King Corp. v. Rudzewicz, 471 U.S. 462, 76 (1986). As such, Minnesota courts have exercised personal jurisdiction over non-resident borrowers and guarantors, despite them never physically entering the state. See Marquette Bus. Credit, Inc. v. Int'l Wood, Inc., Civ. No 09-1383 (JNE/FLN) 2009 WL 825800, at *6-8 (concluding that the Court has personal jurisdiction over non-resident borrower); Marquette Nat'l Bank of Minneapolis v. Norris, 270 N.W.2d 290, 297 (Minn. 1978) (concluding that the Court has personal jurisdiction over non-resident guarantor). Therefore, Strauss's single-day-visit to Minnesota is not dispositive of the personal jurisdiction issue.

The Eighth Circuit has declared that a court may exercise personal jurisdiction over a non-resident guarantor when there is a "substantive identity

of the guarantors and the corporation whose obligation they guarantee, evidence that the beneficiary of the guarantee contract would not have entered into the transaction without the guarantees of specific individuals, or a provision in the guarantee contract or the underlying contract stating that the law of the forum state would control." Arkansas Rice Growers Cooperative Ass'n v. Alchemy Indus., Inc., 797 F.2d 565, 573-74 (8th Cir. 1986) (citations omitted).  Strauss's Guaranty fulfills all three of these categories.  Although Strauss executed the Guaranty in support of a Trust (as compared to a corporation), the facts here are analogous to a case where there is substantive identity between the guarantor and a corporation whose obligation the guarantor guarantees.  See ELA Med., Inc. v. Advanced Cardiac Consultants, Inc., Civil No. 09-3027 (ADM/JJG), 2010 WL 2243435, at *2-5 (D. Minn. June 1, 2010) (finding that Court has personal jurisdiction over three individual defendants who exercised personal guarantees in favor of an underlying contract with a Minnesota forum selection clause); LOL Finance Co. v. Roberts, Civil File No. 09-01587 (MJD/SER), No. 35 at 16-17 (D. Minn. March 23, 2010) (finding that Court has personal jurisdiction over non-resident guarantor); LOL Fin. Co. v. F.J. Faison, Jr. Revocable Trust, Civil No. 09-741 (JRT/RLE), 2009 WL 3381298, at *6 (D. Minn. Oct. 16, 2009) (finding that

Court has personal jurisdiction over non-resident guarantors); Residential Funding Corp. v. Anvil Funding Corp., No. Civ. 04-3043 (JNE/SRN), 2005 WL 1323940, at *4 (D. Minn. June 3, 2005) (finding that Court has personal jurisdiction over non-resident guarantor).  Here, Strauss executed the Guaranty in order to guarantee the Strauss Trust's obligation under the loan.  Strauss is also the Settlor of the Strauss Trust.  Thus, there is substantive identity between the Guarantor and the Debtor.

Second, Plaintiff has alleged that it would not have entered into the loan agreement without the Guaranty from Strauss.  See ELA Med., Inc., 2010 WL 2243435, at *4-5 ("Additionally, the personal guaranty and the underlying agreement were signed on the same day by the same representative rather than months apart as in Arkansas Rice Growers.  This temporal connection supports the assertion that the guarantees served as inducement for the underlying contract.").

Finally, the Guaranty provided that it would be governed by Minnesota law.  See Wessels, Arnold & Henderson v. Nat'l Med. Waste, Inc., 65 F.3d 1427, 1432-33 (8th Cir. 1995) (noting that although a choice of law provision, by itself, is insufficient to subject a defendant to personal jurisdiction, it is "an important

factor in determining whether the defendant purposely availed itself in the forum state"). As a result, Strauss's contacts with Minnesota as a non-resident guarantor are substantial enough to warrant exercising personal jurisdiction.

### b.  Secondary Factors

The Court now considers Minnesota's interest in providing a forum for its residents and the convenience of this forum to the parties. Strauss argues that Minnesota "has no vested interest" in providing a forum for a resolution of a dispute where none of the parties are Minnesota residents. The Court disagrees with the argument that Minnesota lacks any interest as Minnesota has an interest in providing a forum in this case as the Trustee, its witnesses and documents are located in Minnesota and Minnesota law applies. The Court finds that this factor weighs slightly in favor of exercising personal jurisdiction over Strauss.

Strauss also claims that Minnesota is an inconvenient forum because she does not reside in Minnesota and maintains that no witnesses reside in Minnesota. In contrast, LSCH maintains that witnesses and documents from Trustee Wells Fargo Bank, N.A. are located in Minnesota. Where witnesses are in both Minnesota and a foreign state, however, the convenience of the parties favors neither side. Digi-Tel Holdings, Inc. v. Proteq Telecomms. (PTE), Ltd., 89

F.3d 519 (8th Cir. 1996). Therefore, this factor does not weigh into the Court's determination of personal jurisdiction in this case.

### B. Forum Non Conveniens

#### 1.     Forum Non Conveniens Standard

A federal court has discretion to dismiss a case on the ground of forum non conveniens "when an alternative forum has jurisdiction to hear [the] case, and . . . trial in the chosen forum would establish . . . oppressiveness and vexation to a defendant . . . out of all proportion to plaintiff's convenience, or . . . the chosen forum [is] inappropriate because of considerations affecting the court's own administrative and legal problems." Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp., 549 U.S. 422, 429 (2007) (quoting Am. Dredging Co. v. Miller, 510 U.S. 443, 447–48 (1994)). "Initially, the district court must determine whether an adequate, alternative forum is available to hear the case." Fluoroware, Inc. v. Dainichi Shoji K.K., 999 F. Supp. 1265, 1271 (D. Minn. 1997) (citing Reid–Walen v. Hansen, 933 F.2d 1390, 1393 n. 2 (8th Cir. 1991)). "An alternative forum is available if all parties are amendable to process and come within the jurisdiction of that forum." Id. at 1271 (citing Reid–Walen, 933 F.2d at 1393 n. 2). An alternative forum is considered adequate if "the parties will not be

deprived of all remedies or treated unfairly." Reid–Walen, 933 F.2d at 1393 n. 2. Once a district court makes a determination that an adequate, alternative forum exists it "must then balance factors relative to the convenience of the litigants, referred to as the private interests, and factors relative to the convenience of the forum, referred to as the public interests, to determine which available forum is most appropriate for trial and resolution." De Melo v. Lederle Labs., 801 F.2d 1058, 1061 (8th Cir. 1986). The private factors that a district court is to consider include:

> (1) the relative ease of access to sources of proof;
> (2) the availability of compulsory process for attendance of unwilling witnesses and the costs of obtaining attendance of willing witnesses;
> (3) possibility to view the premises, if view would be appropriate;
> (4) all other problems that make trial of a case easy, expeditious and inexpensive; and
> (5) questions as to the enforceability of a judgment if one is obtained.

K-V Pharm. Co. v. J. Uriach & CIA, S.A., 648 F.3d 588, 597 (8th Cir. 2011) (citing Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947)). The public factors include:

> (1) the administrative difficulties flowing from court congestion;
> (2) the "local interest in having localized controversies decided at home;"
> (3) the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action;
> (4) the avoidance of unnecessary problems in conflicts of law or in the application of foreign law; and

>  (5) the unfairness of burdening citizens in an unrelated forum with jury duty.

Piper Aircraft Co. v. Reyno, 454 U.S. 235, 241 n. 6 (1981) (citing Gulf Oil, 330 U.S. at 509).

"The defendant has the burden of persuasion in proving all elements necessary for the court to dismiss a claim based on forum non conveniens." K-V Pharm. Co., 648 F. 3d at 598.  A district court is to give deference to a plaintiff's choice of forum.  Fluoroware, 999 F. Supp. at 1272 (citing Gulf Oil, 330 U.S. at 508).  "[T]he doctrine is to be applied only in 'exceptional circumstances.'" K-V Pharm. Co., 648 F. 3d at 598.  "Unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." Gulf Oil, 330 U.S. at 508.

### 2.    Merits

The Court declines to dismiss the case based on forum non conveniens. The burden is on the Defendant to establish that the Court should dismiss the Complaint, and here, Defendant has not satisfied the burden.  Additionally, the case does not present the exceptional circumstances necessary to invoke the forum non conveniens doctrine.

Accordingly, based upon the files, records, and proceedings herein, IT IS

HEREBY ORDERED:

>Defendant's Motion to dismiss under Federal Rule of Civil Procedure 12(b)(2).  [Docket No. 7] is **DENIED**.

Dated:  May 31, 2013　　　　　　　s/ Michael J. Davis
　　　　　　　　　　　　　　　　　Michael J. Davis
　　　　　　　　　　　　　　　　　Chief Judge
　　　　　　　　　　　　　　　　　United States District Court